UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| ANNE C. DARLING | : | CASE NO: 3:04CV1467 (PCD) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| JOHN E. POTTER, | : | |
| Postmaster General of the United | : | |
| States. | : | |
| Defendant | : | |

**RULING ON PARTIAL MOTION TO DISMISS**

Pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves for partial dismissal. For the reasons stated below, Defendant's Motion [Doc. No. 15] is **granted in part and denied in part.**

**I.   BACKGROUND**

   A.   Procedural Background

In August of 2004, postal worker Anne C. Darling filed a Complaint against John E. Potter in his official capacity as Postmaster General of the United States Postal Service alleging, 1) a "continuing violation" of her Title VII rights against gender discrimination and sexual harassment in her employment, and 2) a hostile work environment based on sexual harassment. Complaint ¶¶ 7, 35, 68; Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (2005). Defendant moves for partial dismissal (of claims contained in ¶¶ 9-34 and sentences 8-13 of ¶ 36) of the Complaint on the grounds of failure to exhaust administrative remedies in a timely manner and, alternatively, failure to allege adverse employment actions as required under the McDonnell Douglas test for a prima facie case of discrimination under Title VII.

B.  Factual Background

Plaintiff has been a postal employee since 1987, and a supervisor since 1999. Compl. ¶ 3. She alleges that a "hostile work environment" subjected her to a continuing series of violations within a pattern of "sexual harassment" dating as far back as a failure to promote her in 1999. Id. ¶¶ 35-36.  In this instance, the sole male finalist (John Orr) was given the position over both the Plaintiff and another woman. Id.

In May of 2001, while Plaintiff served as the Officer In Charge (OIC) of the Hanover branch, she came under the supervision of Thomas Brummett, the Postmaster of Norwich. Id. ¶¶ 3, 9.  Plaintiff received two disciplinary letters from Brummett dated July 31, 2001, one concerning improper telephone use by employees, and the second concerning a pre-disciplinary interview (PDI) alleging Plaintiff's poor performance of duties that were not her responsibility. Id. ¶ 10.  Plaintiff claims that because neither of the other two supervisors John Orr and John McCarthy (both men) received a PDI, she was "targeted" as the only female supervisor in Norwich. Id.

In August of 2001, Brummett changed Plaintiff's job title from "Supervisor Customer Service" to "Mailhandler/Dock Supervisor," telling her that her "close relationship" to mail carriers "would prevent her from being an effective supervisor of delivery." Id. ¶ 12.  He also changed her work hours from 9:15 a.m.-6:15 p.m. to an 11:30 a.m.-8:00 p.m shift. Id. ¶¶ 12, 13.

Shortly after August, 2001 she chose not to apply for a lateral transfer to a day delivery shift that "should" have been non-competitive (given her seniority and grade level) because, after telling him of her interest in the position, Brummett required her to compete for it. Id. ¶¶ 15-16. Ultimately, supervisor Doug Bardot received the job. Id. ¶ 17.  At about the same time,

Brummett also gave supervisor Andrew Moore (by his own admission) an unfair advantage in bidding for a daytime supervisory job, disguising it as a rotating shift and thereby discouraging Plaintiff and "most other Supervisors" from applying. Id. ¶¶ 20-22.  Bardot and Moore had both worked for Brummett when he was Postmaster of Willimantic, prior to joining him at Norwich.  Compl. ¶ 17.  Both, along with Mark Lawrie, received the "rural carrier training" Plaintiff had requested but did not receive. Id. ¶ 27.  Brummett also ordered her to conduct a "rural count" without receiving proper training for the task, but had Moore and Lawrie trained for it even though Moore did not actually do the rural count. Id.  Three times (once in March, 2002 and twice in June, 2002) Brummett failed to offer Plaintiff temporary OIC positions, but gave Bardot and Moore such assignments. Id. ¶¶ 23-26.

Plaintiff claims that by regularly leaving her alone at the post office as soon as her shift began, Bardot and Moore interfered with her ability to perform her duties. Id. ¶ 28. She later received a very poor (10%) rating rendering her "not promotable." Id. ¶ 29.  Plaintiff also claims that Brummett failed to have a required "Merit discussion" with her prior to assigning the low rating. Id. ¶ 33.  She argues that the failure to transfer and the low rating are the result of gender-based discrimination, as she was equally qualified and more experienced than Bardot and Moore, each of whom received "highly promotable" ratings. Id. ¶¶ 29-30, 34.

II.     STANDARD OF REVIEW

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1, 9 (2002) quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.

Ed. 2d 59 (1984). A motion to dismiss must be decided on the facts as alleged in the complaint. Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001). All allegations in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001). The issue is not whether a plaintiff will ultimately prevail on the merits but whether she is entitled to offer evidence to support her claims. Swierkiewicz, 534 U.S. at 511; see also Walshe v. First Investors Corp., 793 F. Supp. 395, 396 (D. Conn, 1992).

### III.  DISCUSSION

   A  Failure to Exhaust Administrative Remedies

      1. Timeliness Requirement

Defendant argues that the claims contained in ¶¶ 9-34 and sentences 8-13 of ¶ 36 of the Complaint are time-barred. Title VII makes it unlawful for an employer to discriminate on the basis of sex with respect to an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1) (2005). Prior to filing a complaint under Title VII in federal court, a plaintiff must timely exhaust administrative remedies through the requisite Equal Employment Opportunity (EEO) process. Belgrave v. Pena, 254 F. 3d 384, 386 (2d Cir. 2001). Ordinarily, if a plaintiff does not begin the EEO process within the required time period, the claim is time-barred. Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 133-34 (2d Cir. 2003). In the case of postal workers and other federal employees, the complainant must request a "pre-complaint counseling" session from a designated EEO counselor within 45 days of the date the alleged discriminatory matter took place to avoid dismissal for untimeliness. 29 C.F.R. § 1614.105(a)(1) (2005). If the Postal Service EEO commission does not issue a final agency

decision within 180 days from the date of a formal complaint, a plaintiff may file a civil action in U.S. District Court. Boos v. Runyon, 201 F.3d 178, 181-82 (2d Cir. 2000); 42 USC § 2000e-16(c) (2005).

The requirement that a plaintiff timely exhaust administrative remedies is not a jurisdictional prerequisite to filing suit in federal court, and should be treated as a statute of limitations. National R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106, 122 (2002). A defense on that basis is therefore better presented as a 12(b)(6) rather than a 12(b)(1) motion under the Federal Rules of Civil Procedure. Terry v. Ashcroft, 336 F.3d 128, 150-51 (2d Cir. 2003); Boos, 201 F.3d at 182-83. The period for suing in federal court remains subject to waiver, estoppel, and equitable tolling, but these doctrines are to be applied sparingly, in rare and exceptional circumstances. Morgan, 536 U.S. at 113; Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001); Boos, 201 F.3d at 185.

Here, Plaintiff requested her EEO pre-complaint counseling on August 27, 2002 and filed a formal complaint on October 9, 2002. As she did not receive a final agency determination until June 22 (more than 180 days later) Plaintiff was entitled to file the instant action. Part. Accept.-Dismiss. Compl., Ex. B at 132; Information for Pre Complaint Counseling, Ex. A at 171; Compl. ¶ 6; 42 USC § 2000e-16(c). Only those claims alleging acts dating from July 12, 2002, however, meet the 45-day statutory deadline. None of the claims that are the subject of this Motion pertain to acts that occurred after July 12. Def. Part. Mot. Diss. at 6-7. Plaintiff concedes this, but argues that the continuing violation doctrine preserves them from untimeliness as part of a hostile work environment claim because at least one act comprising it falls within the 45-day deadline. Pl.'s Obj. Mot. Diss. at 1; Pl.'s Mem. Supp. Obj. Mot. Diss. at 10, 12; Part. Accept.-Diss. Compl., Ex.

B at 135.[1]

        2.  <u>Continuing Violation and Hostile Work Environment Claims</u>

Under the "continuing violation" doctrine, if a plaintiff makes at least one timely EEO charge as part of an "ongoing policy of discrimination," the limitations period is extended for all other claims for discriminatory acts committed under that policy even if those claims are otherwise time-barred. <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 220 (2d Cir. 2004); <u>Patterson v. Oneida County, NY</u>, 375 F.3d 206, 220 (2d Cir. 2004).  The Supreme Court held in <u>Morgan</u>, however, that the continuing violation doctrine does not apply to "discrete discriminatory acts" which are not actionable if time-barred, even when related to acts alleged in timely claims, regardless of their ongoing effect on an employee. <u>Morgan</u>, 536 U.S. at 110, 113-15; <u>Petrosino</u>, 385 F.3d at 220; <u>Elmenayer</u>, 318 F.3d at 134.  Notably, <u>Morgan</u> specifically identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete acts, each of which starts a new clock for filing charges. <u>Morgan</u>, 536 U.S. at 114; <u>Petrosino</u>, 385 F. 3d at 220; <u>Elmenayer</u>, 318 F.3d at 134.  Discrete acts may be used, however, as background evidence in support of timely claims. <u>Morgan</u>, 536 U.S. at 113; <u>Petrosino</u>, 385 F. 3d at 220.

Notwithstanding the <u>Morgan</u> Court's rejection of the continuing violation doctrine for discrete acts, the Second Circuit interprets a hostile work environment as "in effect, a continuing violation" whose constituent parts are different in kind from discrete acts. <u>Elmenayer</u>, 318 F.3d at 134-35 <u>citing</u> <u>Morgan</u>, 536 U.S. at 115-16.  A discrete discriminatory act is a "single completed action" that occurs at a specific time, and typically is actionable on its own. <u>Id</u>. at 135.  In

---

[1] In its determination of her initial complaint, the postal service EEO board waived Plaintiff's 45-day requirement for her hostile work environment claims dating since July, 2001. Partial Acceptance-Dismissal, Ex.B at 134. Several allegations date since July 12, 2002. Compl. ¶¶ 43-52.

contrast, a hostile work environment is composed of a "series of separate acts" each of which, though not generally actionable on its own, "collectively constitute" one unlawful "ongoing policy or practice" that usually cannot be said to occur at one particular moment. Morgan, 536 U.S. at 115, 117; Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004); Elmenayer, 318 F.3d at 134.  Isolated incidents of discrimination thus do not ordinarily rise to the level of a hostile work environment, but the Second Circuit has held that even a single incident may do so if it is severe enough to alter the terms and conditions of employment so as to create such an environment. Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir.1999).

A hostile work environment claim must allege two elements: 1) that the conduct is "sufficiently severe or pervasive" to create an "abusive" workplace "permeated" with discriminatory "intimidation, ridicule and insult" that "unreasonably interferes" with an employees work performance and 2) that there is a specific basis for imputing that hostile conduct to the employer. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993); Patterson, 375 F.3d at 227; Terry; 336 F.3d at 148.  If the claim meets the conditions of these two elements, it does not matter that some of the acts are untimely as long as one falls within the statutory time period; the court may consider them all in assessing an employer's liability. Morgan, 536 U.S. at 116-17; Petrosino, 385 F. 3d at 220.

The first element of a hostile work environment claim has both an objective and subjective component. Id. at 221.  The discriminatory conduct must be so pervasive that a

reasonable person[2] viewing the "totality of the circumstances" would recognize an "objectively hostile or abusive work environment." Id. at 221-22.  Factors relevant in determining whether a workplace is objectively permeated with discrimination include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. Patterson, 375 F.3d at 227; Richardson, 180 F.3d at 437.  The objectivity requirement entails, inter alia, that a work environment equally harsh to men and women "cannot support a claim for sex discrimination." Petrosino, 385 F. 3d at 221.  Subjectively, the victim must also perceive her work environment to be abusive. Id.

With respect to the second element of a hostile work environment claim, employers are not automatically liable for sexual harassment perpetrated by their employees. Petrosino, 385 F. 3d at 225.  An employer is presumed vicariously liable where the harassment is perpetrated by an immediate supervisor, or one with successively higher authority over the employee, if the supervisor's behavior "culminates in a tangible employment action" against the employee.  Id. quoting Burlington Indus., Inc.v. Ellerth, 524 U.S. 742, 765, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998); Terry; 336 F.3d at 148. In the absence of such tangible action, an employer is still liable for a hostile work environment created by a supervisor unless it successfully makes an affirmative defense that (a) it exercised reasonable care to prevent and promptly correct the offending conduct, and (b) the plaintiff failed unreasonably to take advantage of any preventive

---

[2]  The Second Circuit has suggested that a "reasonable person," while not necessarily a member of the plaintiff's protected group should at least be informed of how those who are members would perceive the conduct in question. Petrosino, 385 F. 3d at 222 n12.

or corrective measures by the employer, or otherwise to avoid harm. Petrosino, 385 F. 3d at 225.

Where the perpetrator is the victim's co-worker rather than her supervisor, however, the burden shifts such that employer will be liable only on the plaintiff's showing of the employer's negligence, i.e., that the employer knew (or reasonably should have known) about the harassment, but either provided no reasonable avenue for complaint or failed to take appropriate remedial action. Petrosino, 385 F. 3d at 225; Richardson, 180 F.3d at 441; 29 C.F.R § 1604.11(d) (2005).

As noted above, since all of the alleged discriminatory acts at issue occurred after July 12, 2002, they fall outside the 45-day statute of limitations. Whether they may be excepted from the time-bar hinges, therefore, on whether these claims, taken as true and viewed in a light most favorable to the Plaintiff, stem from 1) essentially discrete acts subject to dismissal for untimeliness, or 2) a series of acts that collectively constitute a hostile work environment. If the former, Defendant's Partial Motion to Dismiss may be granted, subject to equitable tolling. If the latter, the statutory time-bar does not apply, and the issue shifts to whether the Complaint properly alleges the two requisite elements of a hostile work environment claim.

Plaintiff's earliest claim is a 1999 instance of a failure to promote. Compl. ¶ 36. Failure to promote is explicitly identified in Morgan as a discrete act, different in kind from those that comprise a hostile work environment. Its separation from the next alleged failure to promote by three years (March, 2002) also implies a discrete act rather than the ongoing, pervasive and abusive conduct that permeates a hostile work environment.[3] Compl. ¶¶ 22-26. The act is

---

[3] It is also beyond the period (since July, 2001) covered by the timeliness waiver for Plaintiff's hostile work environment claim in her postal service EEO determination. Part. Acc.-Diss. of Compl., Ex. B at 134.

therefore no longer actionable in a discrimination suit due to the untimeliness of the claim nor, as a discrete act, does it succeed under Plaintiff's hostile work environment theory.  Defendant's Motion is therefore  **granted** with respect to this first claim.

Plaintiff's second claim, that her pre-disciplinary interview (July, 2001) was discriminatory, involves conduct that would not have been actionable under Title VII even had she requested her EEO pre-complaint counseling within the 45-day limitations period.  Plaintiff argues that two male co-supervisors were not similarly disciplined, and attributes this to her employer's gender discrimination. Compl. ¶ 10.  She does not claim, however, that any disciplinary action followed her PDI, not even a reprimand. Id.  The claim fails to allege any discriminatory conduct that adversely altered the compensation, terms, conditions, or privileges of Plaintiff's employment, and thus no cause of action under Title VII. Defendant's Motion is **granted** with respect to this second claim.

Plaintiff's third claim is that she was subject to a shift change and alteration of her job title in August, 2001.Compl. ¶¶ 11-14.  These are discrete acts that might have been actionable on their own had her EEO request been timely.  They are now time-barred and not actionable on the grounds either of discrimination or, as discrete acts, of a hostile work environment.  Defendant's Motion is  **granted** with respect to this third claim.

Plaintiff's fourth claim is that shortly after August, 2001 she chose not to apply for a lateral transfer that "should" have been non-competitive because Brummett was going to make her compete for it.  Ultimately the job went to Doug Bardot. Compl. ¶ 15-17.  At about the same time, Brummett allegedly gave an unfair advantage to Andrew Moore using a rigged bidding system that disguised a daytime supervisory job as a less desirable rotating one. Id ¶¶ 20-22; Pl.'s

Mem. Supp. Obj. Mot. Diss. ¶ 5 at 4. Plaintiff did not apply for either transfer, but she alleges that Brummett tried to "discourage" her from doing so. Id; Compl ¶ 21.  Although this is arguably an adverse change in the terms and conditions of her employment, she does not allege that it was <u>discriminatorily</u> adverse, as it was designed to discourage "most other Supervisors" in Norwich, all of whom were male but for the Plaintiff. Id. ¶¶ 10, 21.  As noted above, a work environment equally harsh to men and women cannot support a claim for sex discrimination. <u>Petrosino</u>, 385 F. 3d at 221. Plaintiff has thus failed to allege actionable conduct under Title VII. Defendant's Motion is **granted** with respect to this fourth claim.

      Plaintiff's fifth claim involves two instances of a failure to train, one in August 2001, the other in February, 2002. Compl. ¶¶ 22-27.  As completed, discrete acts, each would have been actionable on its own had she timely made her EEO counseling request, and each is subsequently time-barred from her discrimination claim.  Both are also excluded under <u>Morgan</u> from her hostile work environment claim as untimely discrete acts. Defendant's Motion is **granted** with respect to this claim.

      Plaintiff's sixth claim charges both sex discrimination and a hostile work environment. She alleges that she received a low performance rating (10%) from her supervisor, rendering her "not promotable," and that he never had a required "Merit discussion" with her prior to assigning the low rating.  Id. ¶¶ 29-33.  As discrete acts, the negative job evaluation and lack of merit discussion might have been actionable on their own had Plaintiff made her EEO pre-complaint request within the limitations period, but they are now time-barred.  With respect to the hostile work environment component, however, Plaintiff charges that her low rating was the result of "ongoing" behavior that "interfered" with her employment. Id. ¶¶ 28, 34-35.  She alleges that

Bardot and Moore singled her out as the lone female supervisor, and deliberately left her alone at the post office "on a daily basis" to prevent her from adequately performing her work duties. Id.¶ 28. Such ongoing conduct, assumed to be true for the purposes of this motion, is at least arguably severe and pervasive enough for a reasonable person to find, in light of evidence that might appear through discovery, see Swierkiewicz, 534 U.S. at 512, that Plaintiff's workplace was permeated with discriminatory intimidation that unreasonably interfered with her work performance. Having properly alleged the first element of a hostile work environment in her sixth claim, therefore, the issue shifts to the second - whether there is a specific basis for imputing that hostile conduct to the employer.

      Neither Bardot nor Moore, is the Plaintiff's supervisor. They are her peers. Compl. ¶¶ 3, 17. Plaintiff does not allege the direct involvement of Brummett or of any other supervisor with successively higher authority over her in these acts. The Postal Service is therefore not presumed liable ipso facto for any hostile work environment created by Plaintiff's co-workers. It may still be held vicariously liable, however, if Plaintiff succeeds in showing that her employer negligently knew or should have known about the sexual harassment, and either provided no avenue for complaint or failed to take appropriate remedial action. Having availed herself of the Postal Service EEO process, Plaintiff does not claim that her employer provided no avenue for complaint. She does allege, however, that the offending behavior was part of a hostile work environment "sufficiently widespread, pervasive and prevalent" to charge defendant with "actual and/or constructive notice." Id., ¶ 68. Plaintiff's sixth claim, therefore, alleges both the first and second element of a hostile work environment claim, and survives Defendant's Motion to

Dismiss. Defendant's Motion is therefore **denied** with respect to this claim.[4]

Plaintiff's seventh and most recent claim alleges that on three separate instances (once in March, 2002 and twice in June, 2002), Brummett failed to offer her temporary OIC positions, but gave Bardot and Moore such assignments. Id. ¶¶ 22-26. In Petrosino, however, the Second Circuit held that temporary acting supervisor positions are not actionable promotions. Petrosino, 385 F.3d at 228-29. Even if they were, Morgan explicitly identifies "failure to promote" as a discrete act, actionable on its own if the claim is timely filed, but thereafter time-barred from a discrimination suit. As discrete acts, they also will not support her hostile work environment claim. Defendant's Motion is therefore **granted** as to this last claim.

With respect to the seven claims made in ¶¶ 9 to 34 and sentences 8 to 13 of ¶ 36 of her Complaint, therefore, Plaintiff has failed to exhaust timely her administrative remedies, or otherwise state a cause of action, for all but her sixth claim, contained in ¶¶ 28-34. That claim alleges a hostile work environment based on sexual harassment that unreasonably affected her work performance which, if proven, would entitle her to relief. Defendant's Motion is therefore **granted in part and denied in part.**[5]

---

[4] This finding, of course, makes no statement as to the ultimate merits of Plaintiff's claim, which would be subject to a higher standard than the relatively liberal pleading requirements reflected in a 12(b)(6) motion.

[5] Defendant argues, alternatively, that Plaintiff's discrimination claims should be dismissed for failure to allege adverse employment action under McDonnell Douglas. Def. Part. Mot. Diss. at 9-10; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). Until recently, it was settled precedent in the Second Circuit that a plaintiff in a Title VII suit had to allege specific facts showing each of four elements (including adverse employment action) of a prima facie case of discrimination under McDonnell Douglas to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 509-10. That is no longer the case, however, since the Supreme Court unanimously reversed that precedent in Swierkiewicz. Id. at 511-12.

Consequently, Plaintiff here is not required to plead sufficient facts to make out a prima facie case of adverse employment action merely to survive the instant motion. Her Complaint need only make a short,

IV.     **CONCLUSION**

For the reasons stated herein, Defendant's Motion [Doc. No. 15] is **granted in part and denied in part.** All Claims made in ¶¶ 9 to 34 and sentences 8 to 13 of ¶ 36 of the Complaint are dismissed, except for the hostile work environrent-sexual harassment claim in ¶¶ 28-32 relating to Plaintiff's work performance suffering by her being regularly left alone at her station.

SO ORDERED.
Dated at New Haven, Connecticut, July    31   , 2005

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court

---

plain statement that she would be entitled to relief were her allegations proven true. FED. R. CIV. P. 8(a)(2); Manning, 254 F.3d at 390 n.1. Relief under Title VII for discrimination requires that Plaintiff allege, inter alia, a materially adverse change in the "compensation, terms, conditions, or privileges" of her employment. 42 U.S.C. § 2000e-2(a)(1) (2005). Similarly, her hostile work environment claim must charge, inter alia, that the offending conduct "unreasonably interfere[d]" with her work performance. Patterson, 375 F.3d at 227; Richardson, 180 F.3d at 437.

As discussed above, although the discrimination charge in Plaintiff's sixth claim is time-barred, Plaintiff has met the minimal pleading requirements for the hostile work environment component of that claim. Defendant's alternate argument of failure to allege adverse employment action, therefore, is unpersuasive with regard to the hostile work environment portion of her sixth claim. The remaining claims fail on other grounds.